Jenifer L. Tomchak (USB 10127)
Kinsi G. S. Bollinger (USB 17365)
TOMCHAK | SKOLOUT
10 West 100 South, Suite 700
Tel: (801) 831.4820
Jen.tomchak@tomchaklaw.com
Kinsi.bollinger@tomchaklaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JEFFREY PETERSON, an individual<br><br>Plaintiff,<br><br>v.<br><br>AUTOSAVVY OF WOODS CROSS, LLC a Utah limited liability company; and DOES 1-10.<br><br>Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Case No. 2:25-cv-00447 |

Plaintiff Jeffrey Peterson ("Peterson") complains against Defendant AutoSavvy of Woods Cross, LLC ("AutoSavvy") as follows:

### NATURE OF THE CLAIMS

1.    Peterson brings this action under the Age Discrimination in Employment Act, as amended and codified at 29 U.S.C. § 621, et seq. ("ADEA").

2.    Peterson is a 43-year-old male. While employed at AutoSavvy, Peterson suffered age discrimination and retaliation. As set forth in more detail below, Bret Parham ("Parham"), the Chief Executive Officer of AutoSavvy and Chad Harris, the Vice President of finance,

1

regularly made derogatory comments related to Peterson's age. Two weeks after Peterson reported this conduct to Human Resources "HR," he was terminated.

3.      Peterson seeks compensatory damages, liquidated damages, interest, and attorneys' fees and costs.

## PARTIES

4.      Peterson resides in Arizona and was employed with AutoSavvy from on or around June 16, 2016 through October 3, 2023.

5.      AutoSavvy is a car dealership headquartered in Davis County, Utah and with locations all over the United States, including Draper, Utah and Gilbert, AZ.

6.      DOES 1-10 are subsidiaries or alter egos of AutoSavvy.

7.      At all times relevant to this Complaint, AutoSavvy was Peterson's employer.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) and because the claims are brought under the Age Discrimination in Employment Act of 1967, as codified at 29 U.S.C. § 621, et seq.

9.      Venue is proper under 28 U.S.C. § 1391(d).

10.      Peterson has complied with the administrative requirements set forth in 29 U.S.C. § 626(d). On or about January 22, 2024, Peterson filed a Charge of Discrimination alleging discrimination and retaliation on the basis of age with the Equal Employment Opportunity Commission ("EEOC").

11.      Peterson received a Notice of Right to Sue issued by the EEOC on March 7, 2025.

## GENERAL ALLEGATIONS

1.      AutoSavvy hired Peterson in June of 2016.

2

2.      During Peterson's more than seven-year tenure at AutoSavvy, he was promoted repeatedly, first from a salesperson in AutoSavvy's Woods Cross location to General Manager of Woods Cross; then to Regional Manager over three stores; and then to training, developing, and overseeing almost every new AutoSavvy dealership and opening and directing several AutoSavvy dealerships in other states, including the following:  AutoSavvy of Windsor, CO; AutoSavvy of Colorado Springs, CO; and AutoSavvy of Omaha, NE.

3.      Throughout his tenure at AutoSavvy, Peterson was an exemplary employee. Peterson holds several records and awards for his stellar performance, including the record for number of vehicles sold in a month of any AutoSavvy dealership, Presidents Club in 2018, and another sales award in 2022.

4.      Peterson's hard work and exemplary performance was valued at AutoSavvy as one of its top sales people until 2022, when OnCap—a private equity company that bought AutoSavvy in April 2018—replaced AutoSavvy's existing leadership with an executive team of its own hires.

5.      Under the direction of the new executive team, AutoSavvy engaged in a concerted effort to discriminate against, create a hostile work environment against, and, if that did not work, terminate its older employees.

6.      At that time, AutoSavvy's then new CEO, Parham, and Chad Harris, the Vice President of Finance, began publicly ridiculing, belittling, and undermining Peterson.

7.      The focal point of their harassment was Peterson's age, stating explicitly that they were treating Peterson so poorly because he was an "old guy."

8.      Parham and Harris frequently mocked Peterson using ageist stereotypes, stating he and other "old" employees couldn't "keep up" with other, younger folk and that his ways were "backwards" and out of touch.

3

9.     Not only did Parham and Harris do this publicly, but they did this in front of Peterson's subordinates—humiliating and undermining Peterson in his leadership role.

10.     Moreover, shortly before terminating Peterson, Parham told employees that he wanted to get rid of the "old guys," to bring in "young blood."

11.     In 2020, AutoSavvy claimed that it was promoting Peterson to act as the manager of AutoSavvy of Gilbert, AZ ("Gilbert") because of that dealership's history of poor performance.  Peterson would later learn that this "promotion" was actually part of the concerted effort by AutoSavvy to sabotage his performance so that it could be used as pretext for terminating him on the basis of his age.

12.     In 2022, AutoSavvy intensified its discriminatory and hostile behavior towards its older workers in the hopes that they would quit.

13.     Without any justification, AutoSavvy slashed Peterson's inventory at Gilbert from 200 vehicles to between 140 and 150, making it much more difficult for him to meet his quota, significantly diminishing its operational capacity and metrics.

14.     It reduced Peterson's pay without explanation, warning, or consent.

15.     And it manufactured performance issues by giving Peterson a written warning for unproblematic and authorized behavior such as for taking his weekly day off and for having the lighting at the Gilbert Store repaired (despite being ordered to do so and despite having the repair quote approved).

16.     These actions were not based on performance, but were motivated by discriminatory animus based on age, consistent with the new management's stated desire to replace older workers with younger individuals.

17.     Younger, less experienced employees were retained in comparable or better roles

and received more favorable treatment.

18. AutoSavvy intended to make Peterson's life miserable in the hopes that Peterson would choose to leave voluntarily.

19. Instead, in mid-September 2023, just two weeks before termination, Peterson exercised his legally protected rights and reported the age discrimination to Eileen Velez, the HR Director.

20. In that discussion, Velez appeared surprised at Peterson's treatment. She told him that AutoSavvy was having a difficult time "finding quality managers like [Peterson]" and stated, "I wish I could duplicate you and put you in all our stores."

21. It does not appear that Velez did anything to document her discussion with Peterson, investigate the report, or to follow AutoSavvy protocol for addressing the age discrimination Peterson reported.

22. AutoSavvy took no action to correct the discriminatory behavior.

23. On October 3, 2023, just two weeks after reporting age discrimination, Richard Jackson, AutoSavvy's Chief Operating Officer, told Peterson that Peterson needed to resign or else Parham would terminate him because of performance.

24. Jackson explained that Peterson performed badly because the Gilbert Store sold only forty-two vehicles in September 2023.

25. In reality, the final month before his termination, Gilbert, under Peterson's leadership, achieved the second highest gross profit per vehicle sold of all AutoSavvy's locations and grossed approximately $222,000.

26. Peterson knew the claim of poor performance was manufactured and inaccurate, and he refused to resign.

5

27.    AutoSavvy then terminated him for the pretextual reason of "Unsatisfactory Performance."

28.    AutoSavvy replaced Peterson with Austin Zirilli, a then 24-year-old with only three years' experience, and increased Gilbert's inventory back to 200 vehicles.

29.    Under Zirilli's leadership, the store went from having at least 25-30 vehicle sales at mid-month to less than 10 and yet Zirilli was not terminated for poor performance.

30.    Indeed, AutoSavvy lost over $100,000 in profit the month it fired Peterson.

31.    Prior to Peterson's termination, during the second half of 2022, AutoSavvy began accelerating its termination of employees ages forty and over.

32.    For instance, in 2023, AutoSavvy nearly tripled its 2022 terminations compared with prior years. During this period, AutoSavvy terminated General Managers ("GMs") at least forty years old at a drastically higher rate than those GMs under forty years old regardless of their performance.

33.    Specifically, AutoSavvy terminated 77% of all GMs ages forty and up but only terminated 33% of all GMs under forty.

34.    AutoSavvy's conduct was not merely negligent, but willful and carried out with knowledge or reckless disregard for Peterson's rights under the ADEA.

35.    AutoSavvy's upper management, including individuals responsible for Peterson's demotion, transfer, pay reduction, and eventual termination made age-related comments and articulated a clear plan to replace older employees with "young blood".

36.    These comments, including referring to Peterson as the "old guy" and stating an intent to get rid of the "old guys' were not isolated remarks, but indicative of a deliberate strategy.

37. Peterson was subjected to adverse employment actions shortly after these statements were made and after raising concerns about discrimination with HR.

38. Despite Peterson's internal complaint, AutoSavvy made no meaningful attempt to investigate or remedy the discriminatory conduct.

39. Instead, Peterson was terminated just two weeks after his report—further demonstrating that AutoSavvy acted with retaliatory intent and in knowing violation of Peterson's legal rights.

40. The totality of these facts demonstrates that AutoSavvy's discriminatory and retaliatory actions were willful and justify an award of liquidated damages under the ADEA.

<u>**FIRST CAUSE OF ACTION**</u>
**DISPARATE TREATMENT AGE DISCRIMINATION**
**IN VIOLATION OF 29 U.S.C. § 623(a)(1)**

41. Peterson realleges and incorporates the preceding paragraphs as though fully set forth herein.

42. Peterson is over the age of forty and was so at all times relevant to the events alleged herein.

43. AutoSavvy took a materially adverse employment actions against Peterson by demoting him, reducing his vehicle count, reducing his pay, subjecting him to a hostile work environment, and terminating his employment on October 3, 2023, because of his age.

44. After terminating Peterson, AutoSavvy replaced Peterson with a person under forty.

45. AutoSavvy treated Peterson's younger colleagues more favorably than Peterson, including by hiring a person under forty to replace him and by not capriciously reducing their pay or vehicle count or harassing them with ageist statements.

7

46.    AutoSavvy fired Peterson because of his age.  In the period leading up to Peterson's termination, Parham expressed his discriminatory intent by calling Peterson "old," suggesting that his age made him a less valuable employee, and specifically stating that he intended to replace all of AutoSavvy's older employees with young employees or "young blood."

47.    Peterson suffered damages as a result of AutoSavvy's intentional discrimination, including loss of income, loss of benefits, loss of stock options, emotional distress, damage to his professional reputation, and other compensatory and economic losses.

48.    This conduct was unlawful under the federal Age Discrimination in Employment Act (ADEA).

49.    Accordingly, AutoSavvy is liable to Peterson for compensatory damages, including without limitation all wages, wage increases, benefits, and other compensation to which he would have been entitled but for the discriminatory conduct of AutoSavvy, reasonable attorneys' fees and costs, pre- and post-judgment interest, and for such other and further legal and equitable relief as the Court deems appropriate in an amount to be determined at trial.

50.    AutoSavvy's actions were taken with malice or reckless disregard for Peterson's federally protected rights, and as such, he is entitled to liquidated damages.

**SECOND CAUSE OF ACTION**
**DISPARATE IMPACT AGE DISCRIMINATION**
**IN VIOLATION OF 29 U.S.C. §623(a)(2)**

51.    Peterson realleges and incorporates the preceding paragraphs as though fully set forth herein.

52.    AutoSavvy engaged in an employment practice of purging "old" employees for no reason other than their age.

53. The employment practice included and resulted in the termination of employees ages forty and up at a disproportionate rate to those that were under forty.

54. AutoSavvy implemented policies, practices, and decision-making criteria (e.g. reassignment, pay adjustments, terminations) that, while facially neutral, disproportionately impacted employees over 40 years of age.

55. These policies were not job-related or consistent with business necessity, or less discriminatory alternatives existed.

56. Peterson suffered damages as a result of AutoSavvy's policy of terminating employees forty years and over, including loss of income, loss of benefits, loss of stock options, emotional distress, damage to Peterson's professional reputation, and other compensatory and economic losses.

57. This conduct was unlawful under federal (ADEA) law.

58. Accordingly, AutoSavvy is liable to Peterson for compensatory damages, including without limitation all wages, wage increases, benefits, and other compensation to which Peterson would have been entitled but for the discriminatory conduct of AutoSavvy, reasonable attorneys' fees and costs, pre- and post-judgment interest, and for such other and further legal and equitable relief as the Court deems appropriate in an amount to be determined at trial.

59. AutoSavvy's actions were taken with malice or reckless disregard for Peterson's federally protected rights, and as such, he is entitled to liquidated damages.

## THIRD CAUSE OF ACTION
## RETALIATION IN VIOLATION OF 29 U.S.C. § 623(d)

60. Peterson realleges and incorporates the preceding paragraphs as though fully set forth herein.

9

61.    Peterson engaged in a protected activity by reporting age discrimination to Velez.

62.    After Peterson made this report of discrimination, AutoSavvy terminated Peterson within 2 weeks, which conduct would dissuade a reasonable employee from engaging in the protected activity.

63.    AutoSavvy terminated Peterson because Peterson reported to AutoSavvy the age discrimination that he was experiencing.

64.    Peterson suffered damages as a result of AutoSavvy's intentional retaliation, such as loss of income, emotional distress, damage to his professional reputation, and other compensatory and economic losses.

65.    This conduct was unlawful under both federal (ADEA) law.

66.    Accordingly, AutoSavvy is liable to Peterson for compensatory damages, including without limitation all wages, wage increases, benefits, and other compensation to which he would have been entitled but for the retaliatory conduct of AutoSavvy, reasonable attorneys' fees and other costs, pre- and post-judgment interest, and for such other and further legal and equitable relief as the Court deems appropriate in an amount to be determined at trial.

67.    AutoSavvy's actions were taken with malice or reckless disregard for Peterson's federally protected rights, and as such, he is entitled to liquidated damages.

**FOURTH CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF 29 U.S.C. § 623(a)**

68.    Peterson realleges and incorporates the preceding paragraphs as though fully set forth herein.

69.    AutoSavvy created a hostile work environment for Peterson through, among other things, public criticism, humiliation, speaking negatively of Peterson, belittling Peterson,

sabotaging Peterson's performance, demoting him, manufacturing performance issues, reprimanding him for conduct that was authorized and/or the same as other employees who were not reprimanded, and terminating Peterson when he reported discrimination.

70. Peterson was subjected to unwelcome and repeated comments from management referring to him as an "old guy" along with derogatory statements about older employees and a stated intention to replace them with younger employees.

71. The humiliating age-based remarks and pervasive discriminatory behavior were not isolated, but part of a broader pattern of age-related bias that culminated in Peterson being demoted, transferred to a failing location, stripped of key resources, and subjected to a pay cut and false/manufactured negative performance reviews.

72. This conduct was carried out openly and created an environment in which Peterson was marginalized, humiliated, and targeted because of his age.

73. AutoSavvy's behavior and decision-making sent a clear message that older employees were less valued and unwelcome in the workplace.

74. Peterson reasonably perceived the workplace to be hostile, abusive, and discriminatory based on age.

75. AutoSavvy knew or should have known about the hostile work environment and failed to take prompt or effective remedial action—even after Peterson formally reported the conduct to HR.

76. Such conduct was severe and pervasive enough to alter the conditions of employment and create an abusive working environment.

77. Such conduct interfered with Peterson's ability to do his job.

78.     Peterson suffered damages as a result of the hostile work environment, including emotional distress, loss of income, damage to his professional reputation, and other compensatory and economic losses.

79.     Accordingly, AutoSavvy is liable to Peterson for compensatory damages, including without limitation all wages, wage increases, benefits, and other compensation to which he would have been entitled but for the discriminatory conduct of AutoSavvy, reasonable attorneys' fees and costs, pre-and post-judgment interest, and for such other and further legal and equitable relief as the Court deems appropriate in an amount to be determined a t trial.

80.     AutoSavvy's actions were taken with malice or reckless disregard for Peterson's federally protected rights, and as such, he is entitled to liquidated damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Peterson prays for judgment in his favor and for the following relief:

A. For back pay, including lost wages and benefits;

B. For front pay;

C. For all other compensation Peterson would have received had he not been terminated including commissions, bonuses, and stock options;

D. For liquidated damages;

E. For reasonable attorneys' fees and costs;

F. For pre-judgment and post-judgment interest; and

G. For such other relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the *Federal Rules of Civil Procedure*, Peterson hereby requests trial by jury of all claims and issues triable of right by a jury.

RESPECTFULLY SUBMITTED this 4th day of June 2025.

*/s/ Kinsi Bollinger*

TOMCHAK | SKOLOUT

Jenifer L. Tomchak
Kinsi G. S. Bollinger
*Counsel for Plaintiff*
